Robert P. BAILEY, Appellant,

v.

UNITED STATES, Appellee.

No. 3939.

District of Columbia Court of Appeals.

Argued July 18, 1966.

Decided Oct. 3, 1966.

Roy M. Ellis, Washington, D. C., for appellant.

Edward T. Miller, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., and

Frank Q. Nebeker and William L. Davis, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

This appeal questions the scope of D.C. Code Section 22–1502 which proscribes the knowing possession of certain items used or to be used in lotteries and other forms of gambling.[1] Appellant was convicted under that section in a nonjury trial and sentenced to pay a fine of $500 or serve sixty days.

The facts are not in dispute. The arresting officer testified that he and his partner had resumed their surveillance of appellant as a suspected numbers writer on the morning of his arrest. They first observed him take a bill of an unknown denomination from a man in a gas station and write something on a pad. They next saw him go into a restaurant, and when the arresting officer entered, appellant apparently recognized him and gave some unknown articles to the man in the booth with him. The officer walked outside. Appellant followed him and confessed writing numbers. He was arrested and subsequently taken to the police station where a search of his person disclosed certain cards in his wallet. At this point in the proceedings, an oral motion to suppress the introduction of these cards into evidence was made and denied.

A member of the Gambling and Liquor Squad was called as an expert witness and identified the exhibits as "cut cards" which he described as listings of number combinations which "hit" more frequently than others, and on which the odds are somewhat reduced from the normal 600 to 1 payoff. He stated that each operator makes up his own cards, that his "writers" are obligated to inform players of the reduced odds, and that only rarely do such cards come into the hands of a player. He distinguished them from numbers slips per se (the actual recording of the numbers bet) and characterized them as numbers paraphernalia.

Appellant offered no testimony and presented no evidence. The trial court ruled that "Section 1502 punishes possession of any record to be used in violation of Section 1501, not just numbers slips," and found appellant guilty.

The question before us is one of statutory construction, and in all such cases, the intent of the legislature is controlling. Section 22–1502 was enacted in 1938 to strengthen the existing laws relating to gambling in the District of Columbia.[2] By making the knowing possession of tickets, certificates, bills, tokens, and other devices used in the numbers game a misdemeanor, Congress attempted to give the police a weapon to use against the "writer" who had previously been able to carry the original slips with him without fear of arrest.[3] This effort was complemented by an amendment to Section 22–1501 making the posses-

---

1. Code 1961, § 22–1502 provides: "If any person shall, within the District of Columbia, knowingly have in his possession or under his control, any record, notation, receipt, ticket, certificate, bill, slip, token, paper, or writing, current or not current used or to be used in violating the provisions of section 22–1501, 22–1504, or 22–1508, he shall, upon conviction of each such offense, be fined not more than $1,000 or be imprisoned for not more than one year, or both. For the purpose of this section, possession of any record, notation, receipt, ticket, certificate, bill, slip,

token, paper, or writing shall be presumed to be knowing possession thereof."
The sections referred to in § 22–1502 make it a felony to operate a lottery, or set up or keep gaming tables, and a misdemeanor to bet on the result of athletic contests.

2. S.Rep. No. 35, 75th Cong., 1st Sess. (1937).

3. Numbers slips were formerly written in duplicate or triplicate. Francis v. United States, 188 U.S. 375, 23 S.Ct. 334, 47 L.Ed. 508 (1903), held that the original slips were not lottery tickets.

sion of any "copy or record" of a lottery chance prima facie evidence that the possessor was conducting a lottery.[4]

The new section was amended in 1953 by adding the words "record, notation, receipt" to the list of contraband, and by extending its coverage to include gaming tables and betting on athletic contests.[5] The intent of Congress was to ban *"not only* the knowing possession of lottery tickets and similar writings *but also* the knowing possession of *any records* used or to be used in violating the provisions of the law relating to lotteries [and the above-named other forms of gambling]." [6] (Emphasis added.) This clear statement of intent negates any argument that the new words were intended merely to be synonyms for "numbers slips."

The "cut cards" involved in the case at bar are clearly records, notations, papers and writings used or to be used in violating the provisions of Section 22–1501. They record the numbers "hit" most often, on which reduced odds are to be paid, are part of the everyday paraphernalia of the numbers writer, and are essential to the financial success of the numbers game. We hold that the statutory language is sufficiently broad to cover "cut cards" and find no error in the trial court's ruling.

Appellant argues that his motion to suppress the "cut cards" should have been granted. After carefully reviewing the record, we are convinced that he was not prejudiced by the denial of a hearing on his motion. The trial court had before it sufficient testimony and argument to determine that there was probable cause for his arrest for operating a lottery and that the subsequent search of his person was lawful.[7]

Affirmed.

4. 52 Stat. 198, ch. 72 §§ 1, 2 (1938).

5. 67 Stat. 95, ch. 159 § 206(a) (1953).

6. S.Rep. No. 364, 83d Cong., 1st Sess. (1953). It has long been settled that the numbers game is a lottery. Forte v. United States, 65 U.S.App.D.C. 355, 83 F.2d 612, 105 A.L.R. 300 (1936).

7. See Jennings v. United States, 101 U.S. App.D.C. 198, 247 F.2d 784 (1957).